Hortense M. Robeson, Appellee, v. Greyhound Lines, Inc., Appellant.

Gen. No. 8,366.

Opinion filed April 22, 1930. Rehearing denied May 31, 1930.

BUSH & HARRINGTON, for appellant; T. E. LYONS, of counsel.

BOYER & LEONARD and H. F. SIMONSON, for appellee.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

Appellee recovered a judgment in the circuit court of Champaign county for the sum of $3,000 for damages for injury to her person caused by an automobile collision. The first four counts of the declaration are based upon negligence and the fifth count upon wilfulness and wantonness on the part of appellant.

The first assignment of error submitted to this court is that the fifth count does not state a cause of

action. In substance it is charged therein that the plaintiff on the first day of July, 1928, in the city of Champaign owned and drove a certain automobile in an easterly direction on Stoughton Street toward its intersection with Third Street; that defendant was then and there possessed of and by its servants was operating a certain motor bus in a southerly direction on Third Street toward this intersection; that plaintiff drove her automobile into the intersection aforesaid while said motor bus was approaching from the left on Third Street and while the automobile of the plaintiff was in full and plain view of the driver of the motor bus the driver thereof drove the motor bus at a high and dangerous rate of speed, to wit: 35 miles an hour, without slackening the same, and wilfully and wantonly drove and ran said motor bus against the plaintiff's automobile, overturned the same causing the injury to plaintiff; that the intersection of Third and Stoughton Streets is in a closely built-up residence section of the City of Champaign. It is claimed that the facts alleged in this count do not show any wilful and wanton misconduct on the part of the servant of the defendant in driving said motor bus in a closely built-up section of a populous city for the reason that a violation of the statute in regard to the speed of motor vehicles in cities is not evidence of wilfulness and wantonness. If that was the only allegation as to the conduct of the servants of defendant in the driving of the motor bus the objection would have been well taken but the count also charges that the plaintiff was in full view of the operator of the motor bus and had the right-of-way over the intersection and also that the operator of the motor bus wilfully and wantonly ran the same into her automobile causing the injuries complained of. The averments are sufficient to charge the acts of the operator of the motor bus to have been wilful and wanton.

It is next urged that the proofs do not sustain this count. The evidence is conflicting upon almost every material fact in the case. However, the operator of the motor bus testified that he saw the plaintiff approaching the intersection and driving thereon. The evidence for the plaintiff tended to prove that the motor bus was being driven south on Third Street at a rate of speed between 30 and 40 miles per hour, that said speed was not slackened as it approached the intersection of the two streets and that no signal was given of the approach of the motor bus toward the intersection. Third Street between the curb lines thereof was 37 feet wide. Along this street were two street car tracks, one for northbound traffic and one for the southbound traffic. Third Street was closely built up with residences and was a street of much public travel. The motor bus weighed 14,000 pounds or 7 tons and was carrying at the time of the accident 25 passengers. Whether the driving of such a large motor bus and of such weight and capacity at a speed of from 35 to 40 miles an hour along a much used street in a populous city against an automobile which the operator of the motor bus saw approaching and entering the intersection and which had the right-of-way at the time was wilful and wanton conduct on the part of the operator of the motor bus was a question of fact for the jury to determine. *Bernier v. Illinois Cent. R. Co.*, 296 Ill. 464. In this case it was also held: "Ill-will is not a necessary element of a wanton act. To constitute a wanton act the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury. (20 R. C. L. 21.) It is difficult, if not impossible, to lay down a rule of general application by which we may determine what degree

of negligence the law considers equivalent to a wilful or wanton act. Whether an act is wilful or wanton is greatly dependent upon the particular circumstances of each case. Where the omission to exercise care is so gross that it shows a lack of regard for the safety of others it will justify the presumption of wilfulness or wantonness." In the case of *Lake Shore & M. S. Ry. Co. v. Bodemer,* 139 Ill. 596, it is held that the running of a train at a high rate of speed in a crowded city, over street crossings, upon unguarded tracks so connected with a public street and so apparently the continuation of a public street as to be regarded by ordinary citizens as a public street along a portion of such tracks where persons were known to be passing and crossing every day, in violation of a city ordinance as to speed and without warning of the approach of the train by the ringing of a bell, was such gross want of care and regard for the rights of others as to justify the presumption of wilfulness. In the case of *Bremer v. Lake Erie & Western R. Co.,* 318 Ill. 11, it is said: "The rule is equally well settled that for an injury occasioned by the wilful or wanton act of the defendant, or by such gross negligence as is equivalent to wantonness or wilfulness, the defendant is liable." It was stated in the case of *Brown v. Illinois Terminal Co.,* 319 Ill. 326, "Courts have recognized the difficulty of accurately stating under what circumstances a defendant may be held guilty of, wilful and wanton misconduct in causing an injury. Such conduct imports consciousness that an injury may probably result from the act done and a reckless disregard of the consequences. Ill-will is not a necessary element to establish the charge. . . . A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of the impending danger, to exercise ordi-

nary care to prevent it, or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.'' The facts as established by the evidence introduced on behalf of the plaintiff would sustain a charge of wilfulness or wantonness under the common law without the aid of the statute regarding the speed of motor vehicles in cities or the question of right-of-way at public crossings.

The eighth instruction given on behalf of the plaintiff is as follows: ''The court instructs the jury that under the fifth count of the declaration, in order for the plaintiff to prove that the defendant was guilty of wilful and wanton conduct in the operation of its motor bus at the time and place in question, it is not necessary for the plaintiff to prove actual ill-will on the part of the defendant, or its agents, toward the plaintiff; but if the preponderance or greater weight of the evidence shows that the defendant, in the operation of its motor bus just prior to and at the time of the accident in question, operated the said bus at such high, dangerous and reckless rate of speed (if you find the same was so operated), and so as to evince on the part of the defendant a reckless disregard of the rights of others, and so as to evince a willingness on its part to do injury, then, if you so find from the preponderance of the evidence, the plaintiff would be entitled to recover upon the fifth count of her declaration, charging wilfulness and wantonness.'' This instruction is criticized on the ground that it directs a verdict and does not require the jury to find that the defendant wilfully and wantonly struck the plaintiff's automobile and that it wilfully and wantonly injured the plaintiff. That the motor bus in question struck the plaintiff's automobile is conceded and there is no conflict in the evidence on this point nor as to the fact that by reason of such striking the plaintiff was injured. It is no

ground for a reversal that an instruction assumes as proved a fact conclusively established by the evidence without contradiction. *Brennan v. Streator,* 256 Ill. 468; *Petersen v. Elgin A. & S. Traction Co.,* 238 Ill. 403; *Chicago City Ry. Co. v. Allen,* 169 Ill. 287. The jury could not have been misled by the giving of this instruction.

The defendant filed a plea of not guilty and also a special plea denying the ownership of the bus in question and that the bus was operated by agents or servants of the defendant. On February 24, 1926, a charter was issued for the incorporation of the Purple Swan Safety Coach Lines, Inc., and it was authorized to carry passengers for hire by means of motor buses, etc., and all other power-propelled, drawn or driven vehicles and devices. On April 26, 1926, the Purple Swan Safety Coach Lines, Inc., was authorized by the Secretary of State to do business in this State. On December 6, 1927, this corporation amended its charter by changing its name to that of "Greyhound Lines, Inc." A transcript of these proceedings in regard to the change of name was not filed with the Secretary of State of Illinois until July 18, 1928, 18 days after the accident in this case. The only change made in the organization was the change of name. To sustain the special plea Sparks, the operator of the motor bus, testified that he was employed by the Motor Transit Management Co. and had been so employed for 22 months and was driving "a bus for the Motor Transit Management Company on July 1, 1928, at the time of the accident." The witness Ronn testified that he was an inspector for the Motor Transit Management Co., was such inspector on July 1, 1928, and was in Champaign on the bus in question. The bus in question had the words "Greyhound Lines" painted thereon. The evidence showed that a number of other buses of the same kind and character passed at different times

through the City of Champaign. They were all painted blue, trimmed in white of the same size and marked with the words "Greyhound Lines" and were all Fegeol buses. The bus in question in this case bore the number 113. Proof was made of the licensing of other buses of the Greyhound Lines numbers 111 and 129 and that the application for such licenses was signed "Greyhound Lines, Inc.," but no proof was made in regard to the licensing of this particular bus number 113. Immediately after the accident Sparks, the operator of the bus, handed to the plaintiff a written slip of paper with the words, "Joe D. Sparks, No. 271. Greyhound bus No. 113." Slight evidence of a substantial nature was sufficient to establish the ownership of the motor bus in question and the fact that it was marked "Greyhound Lines" was prima facie evidence that it was the property of and being operated by the servants of that company. *East St. Louis C. R. Co. v. Altgen,* 210 Ill. 213. In the case of *Pittsburgh, C. & St. L. Ry. Co. v. Knutson,* 69 Ill. 103, the court held: "In reference to such a fact we cannot expect full and undoubted proof. The ownership can only be proved or disproved positively by some of the officers of the road. It is no doubt true that the larger portion of the employees of the company, and all persons not connected with it, can have no certain knowledge of the ownership, or what company is using such property. . . . The evidence was prima facie sufficient to prove this fact, that the company owned the property, and if untrue appellants had it in their power to disprove it; but have failed to do so, and cannot complain that the jury have found that issue as they did." The prima facie evidence that the defendant did own the motor bus which caused the injury is in no way disproved by the testimony of Sparks as he was not an officer of the Motor Transit Management Co. and his evidence amounts at the most that he was driving the

motor bus for the Motor Transit Management Co. The testimony of Ronn does not tend to either prove the ownership of the bus nor that it was being operated by the Motor Transit Management Co. The evidence shows that the defendant had a license to operate a line of buses known as the Greyhound Lines for the purpose of carrying passengers for hire within the State of Illinois. The prima facie evidence that the defendant owned the bus is uncontradicted and if in fact it was being operated by another company the defendant cannot escape liability for injuries caused by the negligence of the operator of said bus. It was held in the case of *Pennsylvania Co. v. Ellett,* 132 Ill. 654, that the grant of a franchise, giving the right to operate a railway carries with it the duty to so use the property and manage and control the railroad as to do no unnecessary damage to the person or property of others; and where injury results from the negligent or unlawful operation of the railroad, whether by the corporation to which the franchise is granted, or by another corporation, or by individuals whom the owner authorizes or permits to use its tracks, the company owning the railway and franchise will be liable. This same rule of law applies to the operation of motor buses operating in this State as common carriers for hire under a franchise granted by the State. However, the defendant is precluded from raising this question by the giving of the first instruction to the jury requested by it. This instruction is as follows: "The Court instructs the jury that as matter of law if they believe from the evidence that the automobile of the defendant on approaching the place in question was being operated in a reasonable, prudent and careful manner, and that defendant's driver did everything that an ordinary, reasonable and prudent person would have done under the circumstances, to avoid colliding with the automobile of the plaintiff as soon as

the driver saw, or by the exercise of due care, should have seen, the danger of the plaintiff, then the jury should find the defendant not guilty." This instruction assumes and in fact tells the jury that the motor bus was the property of the defendant and the driver thereof was a servant of the defendant.

We find no reversible error in the record and the judgment of the circuit court will be affirmed.

*Affirmed.*