**ANNETT HOLDINGS, INC.,**
**Petitioner–Appellant,**

v.

**Steve ALLEN, Respondent–Appellee.**

**No. 06–1009.**

Court of Appeals of Iowa.

June 13, 2007.

Charles A. Blades of Scheldrup Law Firm, P.C., Cedar Rapids, for appellant.

Elizabeth Flansburg of Lawyer, Dougherty, Palmer & Flansburg, P.L.C., West Des Moines, for appellee.

Heard by HUITINK, P.J., and ZIMMER and VAITHESWARAN, JJ.

VAITHESWARAN, J.

In this appeal from a workers' compensation decision, we must preliminarily de-

cide whether the commissioner erred in concluding he had subject matter jurisdiction to consider the claim. If the commissioner was correct on this jurisdictional issue, we must decide whether his award of benefits is supported by substantial evidence.

## I.  Background Facts and Proceedings

Annett Holdings, Inc. is an Iowa company.  Annett Holdings hired Illinois resident Steve Allen to work for the company as a truck driver.  Allen's contract of hire stated that any injury Allen sustained in the course of his employment would "be governed exclusively by and construed in accordance with the laws of the State of Iowa, including the Iowa Workers' Compensation Act."

In 2002, Allen filed a petition for workers' compensation benefits in Iowa for an injury that occurred in Missouri.  He alleged he sustained injuries to his back and left leg while trying to secure a load of roofing material.  An arbitration decision was issued in Allen's favor.  Annett Holdings appealed that decision.  While the appeal was pending, Annett Holdings moved to dismiss the petition for lack of subject matter jurisdiction under Iowa Code section 85.71 (2001).[1]  That provision governs the commissioner's jurisdiction over claims for injuries sustained outside the state.  After receiving the motion, the commissioner remanded the case to resolve the jurisdictional issue.  On remand, the deputy commissioner concluded sub-ject matter jurisdiction was lacking.  The deputy dismissed the petition.

Allen filed an administrative appeal.  His appeal was consolidated with Annett Holdings's earlier appeal from the original arbitration decision.  In a final decision, the workers' compensation commissioner concluded subject matter jurisdiction attached under Iowa Code section 85.71.  Proceeding to the merits, the commissioner affirmed the arbitration decision in favor of Allen.

On judicial review, the district court affirmed the commissioner.  Annett Holdings appeals.

## II.  Standards of Review

The Iowa Supreme Court has stated we must review the commissioner's interpretation of Iowa Code section 85.71 under the "erroneous" standard of Iowa Code section 17A.19(10)(c).  *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 464 (Iowa 2004) (holding interpretation of workers' compensation statutes not clearly vested by a provision of law in the discretion of the agency, triggering review under Iowa Code section 17A.19(10)(c)).  Review of the commissioner's application of law to fact is under the "irrational, illogical or wholly unjustified" standard of Iowa Code section 17A.19(10)(m).  *Id.* 465.  Finally, we review the commissioner's fact findings to determine if they are supported by substantial evidence.  Iowa Code § 17A.19(10)(f); *Mycogen Seeds*, 686 N.W.2d at 464.  We apply these standards to the final agency decision to determine if

---

1. Annett Holdings raised the issue in its answer to the petition, withdrew it at the time of hearing, and reasserted the absence of subject matter jurisdiction after receiving the adverse arbitration decision.  The company's initial decision not to pursue the jurisdictional issue did not result in a waiver of the issue.  *See Bair v. Blue Ribbon, Inc.*, 256 Iowa 660, 665–666, 129 N.W.2d 85, 88 (1964) (stating objec-tion based on lack of subject matter jurisdiction may be raised at any time and is not subject to waiver or consent).  For the same reason, the contract language providing for Iowa jurisdiction over the claim is inapposite, as parties cannot consent to subject matter jurisdiction.  *Heartland Express, Inc. v. Terry*, 631 N.W.2d 260, 265 (Iowa 2001).

our conclusions are the same as the conclusions reached by the district court. *Greenwood Manor v. Iowa Dep't of Pub. Health,* 641 N.W.2d 823, 830 (Iowa 2002).

### III. Subject Matter Jurisdiction

Iowa Code section 85.71 states:

If an employee, while working outside the territorial limits of this state, suffers an injury on account of which the employee ... would have been entitled to the benefits provided by this chapter had such injury occurred within this state, such employee ... shall be entitled to the benefits provided by this chapter, if at the time of such injury any of the following is applicable:

1. The employment is principally localized in this state, that is the employee's employer has a place of business in this state or some other state and the employee regularly works in this state, or if the employee's employer has a place of business in this state and the employee is domiciled in this state.

2. The employee is working under a contract of hire made in this state in employment not principally localized in any state and the employee spends a substantial part of the employee's working time working for the employer in this state.

Iowa Code § 85.71.[2] The provision has been interpreted as a subject matter juris-diction statute. *Heartland Express v. Gardner,* 675 N.W.2d 259, 263 n. 3 (Iowa 2003).[3]

Iowa Code section 85.71(1) confers jurisdiction over a claim if "[t]he employment is principally localized in this state." This requirement may be satisfied in one of two ways. First, the employment will be considered "principally localized" in Iowa if the employer has a place of business in this or some other state[4] and the employee "regularly works" in this state. Second, the employment will be considered "principally localized" in this state if the employer has a place of business in this state and the employee is domiciled in this state.

The second definition is not at issue here, as it is undisputed that Allen was not domiciled in this state. We turn to the first definition. There is no question that Annett Holdings had "a place of business in this state." The only question is whether Allen "regularly" worked in Iowa.

The term "regularly" is not defined by statute. The commissioner defined the term as "conforming to a fixed procedure, usual or customary." The commissioner reasoned:

The only part of this subsection that deals with where work is performed is the requirement that the employee regularly work in this state. If the legisla-

---

2. This statute was recently amended. 2005 Iowa Acts ch. 168, § 12 (codified at Iowa Code § 85.71(5) (2007)). We examine the version of the statute in place at the time the workers' compensation claim was filed. *Heartland Express v. Gardner,* 675 N.W.2d 259, 266 (Iowa 2003).

3. Allen contends the commissioner erred in concluding section 85.71 is a subject matter jurisdiction statute. The Iowa Supreme Court rejected this argument in *Gardner,* stating, "section 85.71 has previously been interpreted to be a subject matter jurisdiction stat-

ute, and we find no reason to diverge from that determination." *Gardner,* 675 N.W.2d at 263 n. 3.

4. In *Henriksen v. Younglove Constr.,* 540 N.W.2d 254, 257 n. 3 (Iowa 1995), *superseded by statute* 1997 Iowa Acts ch. 106, § 1, *as recognized in Gardner,* 675 N.W.2d at 264, the Iowa Supreme Court stated the words "or some other state" should probably have been omitted, but declined to decide whether the inclusion of these words was inadvertent or intentional.

ture had intended for an objective standard such as a majority or plurality of the work to be performed in Iowa it could have easily done so. Instead, it chose the subjective word "regularly." Something is either regular or irregular. The term does not refer to quantity. It means conforming to a fixed procedure, usual or customary.

Neither the commissioner nor the parties cite Iowa precedent adopting this definition of "regularly." However, the commissioner's use of this definition is consistent with our well-established principle of statutory construction that, in the absence of a legislative definition, we will apply the ordinary meaning of the term. *Lange v. Iowa Dep't of Revenue*, 710 N.W.2d 242, 247 (Iowa 2006). The definition used by the commissioner is a standard dictionary definition. *Harrington v. Univ. of N. Iowa*, 726 N.W.2d 363, 368 (Iowa 2007); New World Dictionary 1196 (2d ed.1974). We conclude that the commissioner did not err in adopting it.

The commissioner next determined what would need to be proven in applying this definition to the facts of this case. The commissioner stated:

> The statute provides that if the employer has a place of business in this state, Iowa will have jurisdiction if it is usual or customary for the employee to work in this state for the employer. For an over-the-road truck driver, such as the claimant in this case, the employee regularly works in this state if it is usual or customary for the employee to work out of the employer's terminal in this state as the home terminal, pick up loads in this state and transport loads within or through this state. There is not a statutory requirement to meet some unspecified, arbitrarily determined quantity of work while in this state.

In short, the commissioner determined that the ordinary definition of "regularly works in this state" required an unspecified amount of physical presence in this state. This determination is consistent with dicta in the factually similar case of *Heartland Express v. Gardner*, 675 N.W.2d 259 (Iowa 2003). There, the court was asked to decide whether the workers' compensation commissioner had jurisdiction under Iowa Code section 85.71(2) over a claim filed by an over-the-road-truck driver working for an Iowa employer. *Gardner*, 675 N.W.2d at 260–61. Although the court did not address Iowa Code section 85.71(1), the court discussed the meaning of "principally localized," a clause that is contained in both sections. *Id.* at 267. The court stated,

> [B]oth parties seemingly concede that Gardner['s] ... employment was "not principally localized in any state." Presumably, the latter fact is established by evidence that Gardner's actual transportation work for Heartland took him to approximately forty states and he spent no more or less time in any one state.

*Id.* (citation omitted). While this language did not control the court's disposition of the case, the inference to be drawn is that "principally localized" refers to physical presence in the state. Extending this inference to the first definition of "principally localized" contained in section 85.71(1), there would need to be a showing that the employer had a principal place of business in this state and the employee had "actual transportation work" in this state that was greater than in other states. *Id.* We conclude the commissioner did not err in determining that the ordinary definition of "regularly" requires an employee's physical presence in the state.

We turn to the commissioner's application of law to fact. Here, the commissioner began with the physical presence test

but supplemented this test with other factors relating to the employment relationship. *See, e.g., Iowa Beef Processors, Inc. v. Miller,* 312 N.W.2d 530, 533 (Iowa 1981), *overruled on other grounds by Henriksen v. Younglove Constr.,* 540 N.W.2d 254, 260 (Iowa 1995), (stating "the plain meaning of [employment that is principally localized in this state] indicates that the employee must perform the primary portion of his services for the employer within the territorial boundaries of the State of Iowa *or that such services be attributable to the employer's business in this state"*) (emphasis added);[5] *George H. Wentz, Inc. v. Sabasta,* 337 N.W.2d 495, 501 (Iowa 1983); *Patton v. Industrial Com'n,* 147 Ill.App.3d 738, 101 Ill.Dec. 215, 498 N.E.2d 539, 544 (Ill.App.Ct.1986) ("Over-the-road truck drivers constitute a unique class of employees whose activity, by its very nature, is transient. The fact that a truck driver may spend a significant amount of time in one state does not detract from the essentially transitory nature of the activity in which he engages. Although the quantity of time an employee spends in a single locale may be a factor in the determination of principal localization of employment, it is *not* controlling."); 9 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 143.04[2][c], at 143–24 (2003) (stating "a status rooted in the local state by the original creation of the employment relation there, is not lost merely on the strength of the relative amount of time spent in the local state as against foreign states" and stating, "[g]enerally, an employee loses this status only when his or her regular employment becomes centralized and fixed so clearly in another state that any return to the original state would itself be only casual, incidental and temporary by comparison. This transference will never happen as long as the employee's presence in any state, even including the original state, is by the nature of the employment brief and transitory."). The commissioner applied this law as follows:

I find that claimant regularly worked in Iowa for the employer. It was usual and customary for him to pick up the loads in Iowa and drive through Iowa with loads. He brought the truck to the employer's Iowa terminal and reported there himself in conformity with the employer's established procedures. He was controlled by the employer's dispatcher. The amount and frequency of claimant's work in Iowa was not so minor as to characterize it as irregular, out of the ordinary, unusual or abnormal. I find that claimant worked exclusively, or nearly so, performing work attributable to the employer's Iowa business. I find that the employer's Iowa terminal was the claimant's home terminal and business home. It was home, the hub and brain-center of the employment relationship. It was the place from which claimant's actions were controlled and the home base to which he returned. The employment contract was made in Iowa and administered in Iowa. The fact that the employer expressly contracted to have workers' compensation matters be governed by Iowa law is a clear manifestation that it was intended that the employment relationship would be based in Iowa rather than in any other location. Claimant's home terminal was never changed from Iowa and the contract of employment was never administered from any other location. I find that claimant's employment was principally localized in Iowa.

---

5. Although this opinion was overruled, we agree with the commissioner that the portion of the statute relating to the employer's place of business was not affected.

Based on these findings, the commissioner concluded "jurisdiction exists under section 85.71(1)."

Annett Holdings takes issue with this application of law to fact. The company maintains the commissioner "did not focus on the amount of physical presence that the claimant in this case had in Iowa in conducting his work activities for Annett." Allen counters that the commissioner in fact applied a physical presence test and "determined that [he] worked here regularly because he spent up to 25% of his time working here."

We agree with Allen that the commissioner found Allen's working time in Iowa was "probably between 10 percent and 25 percent." The commissioner further found "[i]t was usual and customary for him to pick up loads in Iowa and drive through Iowa with loads." Finally, he found that Allen "brought the truck to the employer's Iowa terminal and reported there himself in conformity with the employer's established procedures." These findings are consistent with the physical presence test the commissioner adopted and they support his determination that Allen regularly worked in Iowa.

We recognize that the commissioner made additional findings of fact relating to Allen's relationship with his employer that were not premised on his physical presence in Iowa. To the extent the commissioner considered this relationship in determining whether Allen "regularly" worked in Iowa, he broadened the ordinary definition of "regularly" that he adopted. He also bypassed the dicta in *Gardner* that regular work in the state means an employee's "actual transportation work" for the employer in the state. *Gardner*, 675 N.W.2d at 267. However, in light of his initial finding that Allen was physically present in Iowa for a sufficient period of time to constitute regular work in Iowa, these additional findings were unnecessary to the decision.

We turn to the final question: whether the commissioner's fact findings on Allen's physical presence in the state are supported by substantial evidence. The parties submitted varying estimates of the time Allen spent in this state. "It is the commissioner's duty as the trier of fact to ... weigh the evidence, and decide the facts in issue." *Arndt v. City of Le Claire*, 728 N.W.2d 389, 394–95 (Iowa 2007). We conclude the commissioner's fact findings on Allen's physical presence in the state are supported by substantial evidence.

We conclude the commissioner did not err in finding subject matter jurisdiction under the first definition in section 85.71(1). In light of our conclusion, we need not address whether jurisdiction attached under section 85.71(2).

## IV. Evidentiary Support for Commissioner's Findings Regarding Injury, Causation and Extent of Disability

As noted, the commissioner adopted the fact-findings contained in the arbitration decision on the merits of Allen's workers' compensation claim. Those detailed fact findings are supported by substantial evidence. *Id.* While the record contains evidence that supports the employer's position, we may not "improperly weigh[ ] the evidence to overrule the commissioner's findings." *Id.*

**AFFIRMED.**